UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>JESUS DANIEL MEJIA, a/k/a JESUS DANIEL MEJIA VELASCO,<br><br>                              Defendant. | Case No.:  3:16-cv-00509-BEN-WVG<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF No. 5]** |

The United States of America has filed a Complaint to revoke the United States citizenship of Defendant Jesus Daniel Mejia, also known as Jesus Daniel Mejia Velasco, for concealing a drug offense during the naturalization process.  (Compl., ECF No. 1.) Plaintiff now moves for summary judgment.  (Mot., ECF No. 5.)  Mejia never filed an opposition but instead filed a letter with the Court, accepted on discrepancy, stating that he "would like to have a chance to fight [his] case against the United States of America." (Ltr., ECF No. 8.)  He later filed a motion for appointment of counsel (ECF No. 9), which this Court denied (ECF No. 10).

For the reasons that follow, the Court **GRANTS** Plaintiff's motion for summary judgment.

/ / /

## BACKGROUND

Mejia was born in 1978 in Mexico and became a permanent resident of the United States in 1993. (Application for Naturalization, Form N-400 ("Form N-400"), Mot. Ex. A.) On August 16, 2011, Mejia signed an Application for Naturalization, Form N-400, which was filed with the San Diego District Office of the U.S. Citizenship and Immigration Services ("USCIS") shortly thereafter. (Form N-400 at Part 11; Compl. ¶ 9 & Affidavit of Good Cause ¶ III.)

On October 25, 2011, the United States Drug Enforcement Administration ("DEA") intercepted telephone calls between Mejia and George Casarez, a known operator of a narcotics trafficking organization. (DEA Report of Investigation ("DEA Report"), Mot. Ex. B.) The intercepted calls indicate that Mejia met with Casarez's subordinates and provided them with a controlled substance. (*Id.*) The substance was later seized. (*Id.*) Mejia was not arrested at the time. (*See id.*)

On December 1, 2011, USCIS Officer Stacey P. Johnson interviewed Mejia regarding his naturalization application to determine his eligibility. (Form N-400 at Part 13.) Mejia swore under penalty of perjury that the contents of the application were true and correct. (*Id.*) During the interview, Officer Johnson made notations on Mejia's application using red pen indicating the questions she reviewed with him during the interview. (Form N-400; Compl. Affidavit of Good Cause ¶ IV.B.iv.) Officer Johnson asked Mejia whether he had ever committed a crime or offense for which he had not been arrested and whether he had ever given false or misleading testimony to any U.S. Government official while applying for any immigration benefit. (Form N-400 at Part 10.) Under oath, Mejia answered "no" to both questions. (*Id.*) On the basis of Mejia's application and interview, Officer Johnson approved Mejia's Application for Naturalization on December 1, 2011. (*Id.* at 1.)

///
///
///

2

On January 20, 2012, Mejia took the oath of allegiance at a naturalization ceremony in Chula Vista, California and was admitted as a citizen of the United States. (Certificate of Naturalization, Mot. Ex. C.)  He was issued a certificate of naturalization. (*Id.*)

Subsequently, on July 20, 2012, Mejia was charged in the Superior Court of the State of California for the County of Los Angeles with possession for sale of a controlled substance (cocaine) in violation of California Health and Safety Code Section 11351, a felony, for his actions on October 25, 2011.  (Felony Compl. for Arrest Warrant at 2, Mot. Ex. E.)  On September 17, 2013, Mejia pled guilty to the section 11351 violation and admitted that the cocaine exceeded twenty kilograms by weight within the meaning of California Health and Safety Code section 11370.4(a).  (Electronic Docket, People of the State of California v. Jesus Daniel Mejia ("Docket") at 4, Mot. Ex. D.)  The Superior Court sentenced Mejia to seven years in County Jail.  (*Id.*)

On February 26, 2016, the United States filed this action to revoke Mejia's citizenship pursuant to 8 U.S.C. § 1451.  The Complaint alleges that Mejia illegally procured his United States citizenship because his commission of a crime and false testimony precluded the establishment of good moral character, and alleges that he concealed and willfully misrepresented material facts during the naturalization process. (Compl. Counts I-IV.)  The United States now moves for summary judgment on all counts.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Material facts are those that may affect the outcome of the case.  *Id.* at 248.  A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party."  *Id.*

A moving party bears the initial burden of showing there are no genuine issues of

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It can do so by negating an essential element of the non-moving party's case, or by showing that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case, and on which the party will bear the burden of proof at trial. *Id.* Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the non-moving party to set forth facts showing that a genuine issue of disputed fact remains. *Id.*

When ruling on a summary judgment motion, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor. *Anderson*, 477 U.S. at 255. The Court must not make credibility determinations or weigh evidence. *Id.* Where the non-moving party has failed to oppose the motion, the Court may only grant summary judgment if the standard of Rule 56 is satisfied. *Henry v. Gill Indus., Inc.*, 983 F.3d 943, 950 (9th Cir. 1993).

In denaturalization proceedings, the United States carries the "heavy burden" of providing "clear, unequivocal, and convincing" evidence that citizenship should be revoked. *United States v. Dang*, 488 F.3d 1135, 1139 (9th Cir. 2007) (quoting *Fedorenko v. United States*, 449 U.S. 490, 505 (1981)). The United States' evidence supporting denaturalization must "not leave the issue in doubt." *Id*. (quoting *Fedorenko*, 449 U.S. at 505). "Thus, summary judgment for the government in a denaturalization proceeding is warranted in narrow circumstances: if, viewing the evidence in the light most favorable to the naturalized citizen, there is no genuine issue of material fact as to whether clear, unequivocal, and convincing evidence supports denaturalization." *United States v. Arango*, 670 F.3d 988, 992 (9th Cir. 2012).

## DISCUSSION

The denaturalization statute, 8 U.S.C. § 1451, provides that denaturalization may be commenced if the citizen's naturalization was "illegally procured" or "procured by concealment of a material fact or by willful misrepresentation." § 1451(a). The United States contends that both grounds are present here.

## I. "Illegally Procured" Naturalization

Naturalization is "illegally procured" when the individual has failed to comply with all congressionally imposed prerequisites for naturalization before and including the time he became a naturalized citizen. *Fedorenko*, 449 U.S. at 506. Strict compliance with all statutory requirements for naturalization is required. *Id*. Noncompliance with any statutory prerequisite renders naturalization "illegally procured." *Id*.

One of the requirements for naturalization is that the applicant must be "a person of good moral character" for the five-year period preceding the filing of an Application for Naturalization and continuing until the applicant takes the oath of allegiance. 8 U.S.C. § 1427(a)(3); *United States v. Bangalan*, No. 13-CV-2570-H, 2014 WL 12531202, at *3 (S.D. Cal. Oct. 6, 2014). Under 8 U.S.C. § 1101(f)(1) through (8), an individual cannot have good moral character if he falls within certain enumerated classes. *See* 8 U.S.C. § 1101(f)(1)-(8). Three provisions are at issue here.

### A. Conviction for Controlled Substance Violation

An applicant who commits a violation of a controlled substance law during the time period in which he or she must show good moral character, and is convicted or admits commission of the offense, is statutorily precluded from being found to be a person good moral character. 8 U.S.C. § 1101(f)(3); 8 U.S.C. § 1182(a)(2)(A)(i)(II). Possession for sale of cocaine in an amount exceeding twenty (20) kilograms by weight is a violation of a controlled substance law within the meaning of federal immigration law. *See* 21 U.S.C. §§ 802(6) (defining which drugs constitute controlled substances), 812 (identifying cocaine as a Schedule II drug).

Here, Mejia pleaded guilty to possession for sale of cocaine in an amount exceeding twenty kilograms, a violation of a controlled substance law, for events occurring on October 25, 2011, the time period in which he was required to establish good moral character. (*See* DEA Report; Felony Compl.; Docket.) The United States has provided clear, convincing, and unequivocal evidence. There is no genuine issue of material fact that Mejia committed a controlled substance violation during the relevant

time period and that he admitted to and was convicted of the offense.  Thus, Mejia could not establish he was a person of good moral character and did not meet the requirements for naturalization.  Accordingly, his naturalization was illegally procured.  The Court **GRANTS** Plaintiff's motion for summary judgment on Count I, illegal procurement of citizenship based on violation of a controlled substance law.

### B. False Testimony

Section 1101(f)(6) bars a finding of good moral character as to any person who, during the statutory period, provides false testimony to obtain naturalization.  8 U.S.C. § 1101(f)(6).  "False testimony" is limited to oral statements made under oath with the subjective intent to obtain an immigration benefit.  *Kungys v. United States*, 485 U.S. 759, 780-81 (1988).  Accordingly, false oral statements made under oath during the interview portion of the naturalization process constitute "false testimony" within the meaning of section 1101(f)(6).  *See United States v. Nunez-Garcia*, 262 F. Supp. 2d 1073, 1083 (C.D. Cal. 2003) (citing *Bernal v. INS*, 154 F.3d 1020, 1023 (9th Cir. 1998)).  Testimony does not need to be material to qualify as false testimony.  *Kungys*, 485 U.S. at 779; 8 C.F.R. § 316.10(b)(vi).

The undisputed evidence demonstrates that Mejia provided false oral answers under oath to questions asked by USCIS Officer Johnson in his naturalization interview, which occurred during the time when he was required to show good moral character.  Specifically, he denied ever committing a crime for which he had not been arrested, despite having committed a controlled substance violation on October 25, 2011 for which he had not yet been arrested.  (Form N-400 at Part 10; DEA Report; Felony Compl.; Docket.)  Mejia made this false statement while in pursuit of an immigration benefit.  Therefore, Mejia provided false testimony within the meaning of section 1101(f)(6) and was statutorily precluded from establishing good moral character.  Thus, Mejia illegally procured his naturalization on this ground as well.  The Court **GRANTS** Plaintiff's motion on Count III, illegal procurement of citizenship based on false testimony.

/ / /

**C. Catch-all Provision**

Section 1101(f) contains a "catch-all" provision, which provides, "The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character." 8 U.S.C. § 1101(f). Federal regulations provide additional criteria for when a naturalization applicant shall be found to lack good moral character. *See* 8 C.F.R. § 316.10. Relevant here, the regulations state:

> Unless the applicant establishes extenuating circumstances, the applicant shall be found to lack good moral character if, during the statutory period, the applicant:
>
> (iii) Committed unlawful acts that adversely reflect upon the applicant's moral character, or was convicted or imprisoned for such acts, although the acts do not fall within the purview of § 316.10(b)(1) or (2).

8 C.F.R. § 316.10(b)(3).

Mejia's possession of cocaine for sale during the statutory period, an offense for which he was later convicted and imprisoned, constitutes an unlawful act that adversely reflects on his moral character and bars him from establishing good moral character. It does not matter that the arrest and conviction occurred after naturalization. *See United States v. Teng Jiao Zhou*, 815 F.3d 639, 644 (9th Cir. 2016) (citing cases holding that naturalized citizens who committed unlawful acts under the "catch-all" provision during the statutory period prior to taking the oath of allegiance, but who are arrested and convicted after naturalization, can have their citizenship revoked for lack of good moral character).

No extenuating circumstances exist to rebut a finding that Mejia lacked good moral character during the statutory period. The extenuating circumstances exception is narrow and "focuses on circumstances during statutory period that may 'palliate or lessen' an offender's guilt for an offense." *Zhou*, 815 F.3d at 644. The only argument that Mejia offers comes via the letter that he submitted to the Court. In that letter, he writes:

> I had to plea guilty to charges from 2011 or I would have served 35 years for

> something I didn't commit. I also have two daughters who are U.S. citizens and a wife that need me. I know I made a mistake but would like to get a second chance and prove tha[t] I am not a bad person. I have always worked and made a good living. I am currently employed and trying to redo my life and show everyone and this country that I am a trust worthy [sic] person.

(Ltr. at 2.)

To the extent that Mejia now denies his role in the offense, the Court rejects that argument. Mejia voluntarily pleaded guilty, and the Superior Court accepted the guilty plea and sentenced him accordingly. (Docket at 4.) *Cf. Zhou*, 815 F.3d at 644 (rejecting defendant's attempt to minimize his culpability, finding that "a jury unanimously thought otherwise, and that verdict binds this court"). Additionally, Mejia's contentions that he is trying to "redo" his life and that his family needs him are to no avail because the extenuating circumstances exception does not allow for a "post-naturalization retrospective on the person, his achievements, or the unfortunate effect that denaturalization will surely have." *Id.* There is nothing in the record concerning any mitigating matter during the statutory period. Therefore, there are no extenuating circumstances applicable here, and Mejia lacked good moral character upon naturalization. Accordingly, the Court **GRANTS** Plaintiff's motion on Count II, illegal procurement of citizenship by committing an unlawful act that adversely reflected upon the applicant's good moral character.

## II.  Naturalization "Procured by Concealment of a Material Fact or by Willful Misrepresentation"

To revoke naturalization for willful concealment or misrepresentation of a material fact under 8 U.S.C. § 1451(a), the government must establish that the naturalized citizen misrepresented or concealed some fact, the misrepresentation or concealment was willful, the fact was material, and the naturalized citizen procured citizenship as a result of the misrepresentation or concealment. *Arango*, 670 F.3d at 994-95 (citing *Kungys*, 485 U.S. at 767). A misrepresentation or concealment is "willful" if it was "deliberate and voluntary." *Id.* at 995 (quoting *Espinoza-Espinoza v. INS*, 554 F.2d 921, 925 (9th Cir.

1977)). To be material, a misrepresentation must have "a natural tendency to produce the conclusion that the applicant was qualified." *Kungys*, 485 U.S. at 771-72; *United States v. Alferahin*, 433 F.3d 1148, 1155 (9th Cir. 2006). A misrepresentation or concealment has this "tendency" if an honest representation "would predictably have disclosed other facts relevant to [the applicant's] qualifications." *Kungys*, 485 U.S. at 774. The Government must produce "evidence sufficient to give rise to a fair inference that the applicant was statutorily ineligible for naturalization." *Alferahin*, 433 F.3d at 1155-56 (9th Cir. 2006) (quoting *United States v. Puerta*, 982 F.3d 1297 (9th Cir. 1992)). When the government shows that citizenship was "obtained as a result of the application process in which the misrepresentations or concealments were made," naturalization was "procured by" the misrepresentation. *Kungys*, 485 U.S. at 777.

Here, all four elements are present. First, it is undisputed that Mejia misrepresented a fact about his criminal history during his naturalization interview. In responding to Officer Johnson's questions, Mejia falsely stated that he had never committed a crime for which he had not been arrested. In fact, Mejia had committed the crime of possession of cocaine for sale on October 25, 2011.

Second, the misrepresentation was willful. The objective evidence shows that Mejia knew he was providing a false answer. He had committed the crime only five weeks before his interview, and information from the DEA Report indicates that Mejia had a history of serving as a narcotics supply source for the Casarez narcotics trafficking organization. (Form N-400; DEA Report.) Mejia later admitted his guilt to the crime.

Third, the misrepresentation was material. By misrepresenting his criminal past, his lies had the natural tendency to influence USCIS's decision that he was qualified. Had Mejia disclosed his actual criminal history, he would have been statutorily ineligible for naturalization. The United States has presented evidence raising a fair inference that a statutory disqualifying fact exists because controlled substance violations preclude finding that an applicant has good moral character.

///

Fourth, and finally, Mejia procured his citizenship as a result of his material misrepresentation. If Mejia had been honest, he would not have been granted citizenship.

There are no genuine disputes that Mejia obtained his citizenship by concealment of a material fact or by willful misrepresentation. The United States has met its heavy burden and the Court therefore **GRANTS** Plaintiff's motion for summary judgment on Count IV, concealment or willful misrepresentation by failing to disclose his criminal history.

## CONCLUSION

Viewing the evidence in the light most favorable to Mejia, there are no genuine issues of material fact as to whether clear, unequivocal, and convincing evidence supports denaturalization. Accordingly, the Court **GRANTS** the United States' motion for summary judgment on all counts. The Court **REVOKES AND SETS ASIDE** the grant of United States citizenship to Defendant Jesus Daniel Mejia, also known as Jesus Daniel Mejia Velasco, and **CANCELS** his certificate of naturalization. The Court **ORDERS** Defendant to surrender and deliver his certificate of naturalization and other indicia of United States citizenship to the Attorney General, including his United States passport.

**IT IS SO ORDERED.**

Dated: January 10, 2017

Hon. Roger T. Benitez
United States District Judge